## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CBS OUTDOOR, INC., as successor to Olympic Outdoor Advertising, Inc., | ) ) ) | FILED: AUGUST 14, 2008<br>08CV4616<br>JUDGE GOTTSCHALL |
| Plaintiff, | ) ) ) | MAGISTRATE JUDGE MASON<br>JFB |
| vs. | ) ) | No. |
| VILLAGE OF ITASCA, ILLINOIS; CLAUDIA GRUBER; JEFF AIANI; MICHAEL LATORIA; ELLEN LEAHY; JEFF PRUYN; RON PUTZELL; TOM REYNOLDS; and WAYNE HUMMER TRUST COMPANY, N.A., as Trustee under Trust Agreement dated 4-16-07 and known as Trust BEV 2384, | ) ) ) ) ) ) ) ) ) ) | (Removed from the Circuit Court of Cook County-Chancery Division, 08 CH 24689) |
| Defendants. | ) | |

### NOTICE OF REMOVAL

NOW COME the Defendants, VILLAGE OF ITASCA, CLAUDIA GRUBER, JEFF

AIANI, MICHAEL LATORIA, ELLEN LEAHY, JEFF PRUYN, RON PUTZELL, TOM

REYNOLDS by and through one of their attorneys, MICHAEL D. BERSANI of HERVAS,

CONDON & BERSANI, P.C., and, pursuant to 28 U.S.C. §§ 1441 and 1446 file this notice of

removal of the above-captioned matter from the Circuit Court of Cook County, Illinois, under

Docket Number 08 CH 24689 to this Honorable Court.

In support of this Notice, the Defendants state the following:

### JURISDICTION

1.     This Court has original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §

1343 in that the instant complaint purports to assert a civil action pursuant to 42 U.S.C. § 1983

and the United States Constitution.

## STATEMENT OF FACTS

2.     This action was filed on July 9, 2008, in the Circuit Court of Cook County,

Illinois, alleging in Count I a violation of the Illinois Eminent Domain Act; in Count II a federal

civil rights violation pursuant to 42 U.S.C. §1983 and the United States Constitution (alleging

procedural and substantive due process and takings violations); and, a declaratory judgment

claim under Illinois.  A copy of the complaint filed in the Circuit Court of Cook County is

attached hereto as Exhibit A.

3.     Plaintiff alleges in the complaint that the Defendants have threatened the

dismantling of its billboard without payment of just compensation in violation of Plaintiff's

constitutional rights.

## BASIS FOR REMOVAL

4.     This Notice for Removal is timely made under 28 U.S.C. § 1446(b).  Not more

than 30 days have passed since service of the summons and complaint on the Defendants.  All

Defendants have consented to this removal.

5.     Removal of a civil action is allowed under 28 U.S.C. § 1441(b) by Defendants

who are sued on a claim or right arising under the Constitution or laws of the United States for

which this Court has original jurisdiction.  This action is removable without regard to the

citizenship or residence of the parties.

6.     The Plaintiff's complaint which invokes 42 U.S.C. § 1983 is removable to this

Honorable Court.  The action is within the subject matter jurisdiction of this Court, and this

Honorable Court is an appropriate forum in which to litigate claims based on federal

2

constitutional violations.

WHEREFORE, the Defendants, VILLAGE OF ITASCA, CLAUDIA GRUBER, JEFF

AIANI, MICHAEL LATORIA, ELLEN LEAHY, JEFF PRUYN, RON PUTZELL, TOM

REYNOLDS , file this Notice of Removal of the above-captioned litigation from the Circuit

Court of Cook County, Illinois to this Honorable Court.

                         s/Michael D. Bersani
                         MICHAEL D. BERSANI, One of the
                         Attorneys for the Defendants VILLAGE OF
                         ITASCA, CLAUDIA GRUBER, JEFF
                         AIANI, MICHAEL LATORIA, ELLEN
                         LEAHY, JEFF PRUYN, RON PUTZELL,
                         TOM REYNOLDS

MICHAEL D. BERSANI
Bar Number 06200897
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone: 630-773-4774
Fax: 630-773-4851
mbersani@hcbattorneys.com

STATE OF ILLINOIS      )
                       ) SS.
COUNTY OF DUPAGE       )

I, MICHAEL D. BERSANI, do hereby certify, and having been first duly sworn upon

oath do hereby state, that I have read the above and foregoing Notice of Removal, by me

subscribed as signatory for VILLAGE OF ITASCA, CLAUDIA GRUBER, JEFF AIANI,

MICHAEL LATORIA, ELLEN LEAHY, JEFF PRUYN, RON PUTZELL, TOM REYNOLDS ,

and the same is true and correct to the best of my knowledge and belief.

_____
MICHAEL D. BERSANI

SUBSCRIBED and SWORN to before

me this 12th day of August, 2008.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
Deborah A. Hoekstra
Notary Public, State of Illinois
My Commission Exp. 06/01/2010

MICHAEL D. BERSANI
Bar Number 06200897
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone: 630-773-4774
Fax: 630-773-4851
mbersani@hcbattorneys.com

4

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CBS OUTDOOR, INC., as successor to )
Olympic Outdoor Advertising, Inc., )
                                  )
         Plaintiff, )
                                  )
         vs. )      No.
                                  )
VILLAGE OF ITASCA, ILLINOIS; )    (Removed from the Circuit Court of Cook
CLAUDIA GRUBER; JEFF AIANI; )      County-Chancery Division, 08 CH 24689)
MICHAEL LATORIA; ELLEN LEAHY; )
JEFF PRUYN; RON PUTZELL; )
TOM REYNOLDS; and WAYNE )
HUMMER TRUST COMPANY, N.A., )
as Trustee under Trust Agreement dated )
4-16-07 and known as Trust BEV 2384, )
                                  )
         Defendants. )

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2008, I electronically filed the foregoing Notice of Removal with the Clerk of the Court using the CM/ECF system, and I hereby certify I have mailed by United States Postal Service, certified mail, return receipt requested, the documents to the following non CM/ECF system participant:

Robert J. Weber          David Letvin
30 N. LaSalle Street      Letvin & Stein
Suite 2900               541 N. Fairbanks Court
Chicago, IL 60602       Suite 2121
312-920-0120           Chicago, IL 60611
                        312-527-2841

                        s/Michael D. Bersani
                        MICHAEL D. BERSANI, Bar Number 06200897
                        Attorney for Defendant
                        HERVAS, CONDON & BERSANI, P.C.
                        333 Pierce Road, Suite 195
                        Itasca, IL 60143-3156
                        Phone: 630-773-4774
                        Fax: 630-773-4851
                        mbersani@hcbattorneys.com

FILED: AUGUST 14, 2008
08CV4616
JUDGE GOTTSCHALL
MAGISTRATE JUDGE MASON
JFB

| 2120 - Served | 2121 - Served | CCG N001-10M-1-07-05 ( ) |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, <u>CHANCERY</u> DIVISION

(Name all parties)

CBS Outdoor, Inc.

v.

Village of Itasca, Claudia Gruber, Jeff Alani, Michael Latoria, Ellen Leahy, Jeff Pruyn, Ron Putzell, Tom Reynolds & Wayne Hummer Trust Company, N.A., as trustee u/t/a dated 4-16-07 aka Trust BEV 2384

**SUMMONS**

No. **08CH24689**

Deputy Sheriff:
See attached for service

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☐ Richard J. Daley Center, 50 W. Washington, Room ____802____, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: __25892__

Name: __Robert J. Weber__

Atty. for: __Plaintiff__

Address: __30 N. LaSalle Street, Suite 2900__

City/State/Zip: __Chicago, IL 60602__

Telephone: __312-920-0120__

Service by Facsimile Transmission will be accepted at: _____

WITNESS, **JUL 09 2008**

_____ Clerk of Court

Date of service: _____,
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code) (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLIN**

EXHIBIT
A

Deputy Sheriff—

Please serve the following named defendants:

> Village of Itasca, Illinois,
> Claudia Gruber, Village President,
> Jeff Aiani, Village Trustee,
> Michael Latoria, Village Trustee,
> Ellen Leahy, Village Trustee,
> Jeff Pruyn, Village Trustee,
> Ron Putzell, Village Trustee, and
> Tom Reynolds, Village Trustee

at the Village of Itasca, Illinois Village Hall, 550 W. Irving Park Road, Itasca, IL 60143 (630-773-0835)

Attorney No. 25892

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

CBS OUTDOOR, INC., as successor to Olympic )
Outdoor Advertising, Inc.; )
)
Plaintiff, )
)
v. )
)
VILLAGE OF ITASCA, ILLINOIS; CLAUDIA )
GRUBER; JEFF AIANI; MICHAEL LATORIA; )
ELLEN LEAHY; JEFF PRUYN; RON PUTZELL ;)
TOM REYNOLDS; and WAYNE HUMMER )
TRUST COMPANY, N.A., as Trustee under Trust )
Agreement dated 4-16-07 and known as Trust BEV )
2384, )
)
Defendants. )

No. 08CH24689

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

The plaintiff, CBS Outdoor, Inc., an Illinois corporation, as successor to National Advertising Company, the successor to Olympic Outdoor Advertising ("CBS"), by its attorney, Robert J. Weber, for its verified complaint for a declaratory judgment and injunctive relief against the defendants, Village of Itasca, Illinois ("Village"), Claudia Gruber (the "Mayor"), Jeff Aiani, Michael Latoria, Ellen Leahy, Jeff Pruyn, Ron Putzell, Tom Reynolds (collectively, the "Village Trustees") and Wayne Hummer Trust Company, N.A., as trustee under trust agreement dated April 16, 2007 (the "Trust"), states, as follows:

### Preliminary Statement

In violation of the United States Constitution, the Constitution of the State of Illinois and the Illinois Eminent Domain Act, the Village, the Mayor and the Village Trustees (collectively, the "Village Defendants"), using the threat of monetary penalties, are forcing the dismantling and removal of CBS' otherwise legal billboard (the "Subject Sign") without payment of just compensation. The Subject Sign was constructed in 1982 pursuant to permits that the State of

\\Jill\documents\Open Files\CBS-Viacom-Infinity-OSI\Itasca\Work in Progress\Complaint-Final.doc

Illinois (the "State") and the Village issued, and is currently maintained in conformity with all applicable, valid statutes, ordinances and regulations. The Subject Sign shows to Interstate Highway I-290. The action of the Village Defendants is a denial of procedural and substantive due process, and constitutes a taking and damaging without providing for payment of just compensation.

## Allegations Common to All Counts

## The Parties

1.     CBS is an Illinois corporation that maintains an office at 440 N. Michigan Avenue in Cook County, Illinois.

2.     CBS is in the outdoor advertising business in that it owns or leases property on which it constructs and maintains outdoor advertising structures, space on which it sells or donates to third parties to communicate their commercial and non-commercial messages to the public.

3.     The Village is an Illinois municipal corporation, located in DuPage County. As such, the Village has police power to zone and regulate the use of property, and the power of eminent domain, subject to the constitutional obligation to pay just compensation.

4.     The Mayor, Claudia Gruber, is the president of the Village who, as part of her duties, enforces the Villages ordinances. On information and belief, CBS alleges that the Mayor resides in the Village.

5.     The Village Trustees, Jeff Aiani, Michael Latoria, Ellen Leahy, Jeff Pruyn, Ron Putzell and Tom Reynolds, are the elected and sitting trustees of the Village. As such, they vote on ordinances and resolutions including, but not limited to, those relating to zoning, land use and land acquisition. On information and belief, CBS alleges that the Village Trustees reside in the Village.

6.     The Trust is an Illinois land trust with its principal place of business in Cook County, Illinois. The trust holds fee simple title to the Subject Property that is commonly known as 865 W. Irving Park Road, Itasca, Illinois. Leonard Zmijewski and David Zmijewski (the

"Zmijewskis") are the beneficiaries of the Trust.

## Lease and Sign History

7.      On or about May 14, 1982, Olympic Outdoor Advertising, Inc. (Olympic"), as lessee, and Vern McCarthy ("McCarthy"), as lessor, executed a lease agreement (the "1982 Lease") wherein Olympic was given possession of a portion of the Subject Property to construct and maintain an outdoor advertising structure (the "Subject Sign"). The 1982 Lease had an initial term of fifteen (15) years; lessee had an option to extend for a period of five (5) years. A true, correct and complete copy of the 1982 Lease is Exhibit 1 at Tab 1 of Plaintiff's appendix (the "Appendix") that is filed contemporaneously with this complaint, and is incorporated herein by reference.

8.      On or about May 14, 1982, Olympic received State permit no. 1-1623 for the Subject Sign. A copy of permit no. 1-1623 is at Tab 2 of the Appendix.

9.      In or about July 1982, the Village issued electrical and building permits to Olympic for the Subject Sign. Copies of said Village permits are at Tab 3 of the Appendix.

10.     Thereafter, Olympic constructed the Subject Sign on the Subject Property. The Subject Sign consists of a single pylon anchored in concrete at a depth of approximately 20 feet in the ground that supports the super structure. Two back-to-back faces, each measuring 14 feet in height and 48 feet in width, are attached to the super structure. The top of the Subject Sign is approximately 60 feet above the ground.

11.     Olympic constructed the Subject Sign solely for the purpose of its outdoor advertising business on the Subject Property. Since it was constructed, the Subject Sign has been continuously used for outdoor advertising.

12.     The Subject Sign cannot be disassembled and removed from the Subject Property without destroying it such that, upon dismantling, the various parts of the Subject Sign, except lighting fixtures, will have only salvage value.

13.     The Subject Sign cannot be relocated within the Village because: (a) CBS does not have a lease for a similar location, showing to an interstate highway; (b) the Village totally

prohibits standardized outdoor advertising structures; and (c) assuming that CBS acquired a suitable lease and location, the Village would not grant a special use permit which is the Village's method of improperly controlling all land uses within its boundaries.

14.     In all respects, the Subject Sign is constructed and maintained in accordance with applicable building codes, and is not a threat to public health, welfare and safety. The Subject Sign was constructed in an area that was commercially zoned and permitted advertising signs.

15.     On or about May 1, 1984, Olympic conveyed all of its assets, including the Subject Sign and the 1982 Lease, to National Advertising Company ("National), also an outdoor advertising company.

16.     In May 1, 1984, Minnesota Mining and Manufacturing Company ("3M") owned all of the outstanding shares of National's common stock. 3M subsequently sold said stock to Outdoor Systems, Inc. ("OSI"), an outdoor advertising company.

17     On or about April 30, 1998, Office Electronics, Inc. ("Office Electronics"), as lessor and the successor in interest to McCarthy, and OSI, as lessee and successor in interest to National, signed a lease (the "1998 Lease") wherein OSI retained possession of a portion of the Subject Property to maintain and operate the Subject Sign. The 1998 Lease had a ten (10) year term, beginning June 1, 1998 and ending May 31, 2008. The Lease gave the tenant the right to continue in possession after May 31, 2008 for one (1) year terms, provided that a notice of termination was not served at least ninety (90) days before the end of the term. A copy of the 1998 Lease is Exhibit 4 at Tab 4 of the Appendix.

18.     Thereafter, by a series of mergers, OSI became CBS.

19.     In calendar years 2006 and 2007, CBS earned net income from the Subject Sign in excess of One Hundred Thousand Dollars ($100,000.00).

20.     The Subject Sign, coupled with a right to possession of a portion of the Subject Property has a current contributory market value of approximately $1.7 million.

### Village Zoning Ordinances

21.     On or about February 1, 1983, the Village, at the request of Office Electronics,

enacted ordinance no. 542-83 ("Ord. 542-83"), rezoning the Subject Property from R-3 to R-3 with a special use as a planned development. As a condition of the enactment of Ord. 542-83, the Village improperly required that Office Electronics cancel the 1982 Lease by May 13, 1992, and cause the Subject Sign to be removed from the Subject Property by June 12, 1992 (the "1983 Sign Removal Provisions"). A copy of Ord. 542-83 is Exhibit 5 at Tab 5 of the Appendix.

22.    The 1982 Lease was not cancelled and the Subject Sign has not been removed.

23.    In August 2003, the Village, at the request of TST/Impreso, as the successor to Office Electronics, enacted ordinance no. 1180-03 ("Ord. 1180-03"), amending the planned development for the Subject Property. As a condition of the enactment of Ord. 1180-03, the Village required that TST/Impreso cause the Subject Sign to be removed from the Subject Property by June 30, 2008 (the "2003 Sign Removal Provision").

24.    In or about June 2007, the agents of the Trust agreed to purchase the Subject Property, contingent in part upon the Village's granting a special use whereby the Trust's projected tenant, Mr. David's Carpet Service, Ltd. ("Mr. David's"), is permitted to use the Subject Property for an office, warehouse storage, sales and installation of floor and wall coverings.

25.    The Zmijewskis are the officers of Mr. David's.

26.    In July 2007, the Village Defendants, at the request of the Zmijewskis and Mr. David's, enacted ordinance no. 1395-07 ("Ord. 1395-07"), amending the planned development for the Subject Property to permit Mr. David's to use the Subject Property for an office, warehouse storage, sales and installation of floor and wall coverings. When enacting Ord. 1395-07, the Village Defendants inserted a provision (the "2007 Sign Removal Provision") that the Subject Sign be removed from the Subject Property by June 30, 2008. A copy of Ord. 1395-07 is Exhibit 6 at Tab 6 of the Appendix. The 1983, 2003 and 2007 Sign Removal Provisions shall hereinafter be referred to collectively as the "Removal Provisions".

27.    On or about August 30, 2007, the Trust acquired title to the Subject Property.

28.    As part of the Trust's acquisition of title to the Subject Property, the 1998 Lease

was assigned to the Zmijewskis, doing business as 720 Annoreno Building Partnership and 720 Annoreno Partnership.

29.     Also as part of the Trust's acquisition of title to the Subject Property, Mr. David's leased the Subject Property and the building located thereon, subject to the rights of CBS under the 1998 Lease.

30.     Thereafter, the Trust served a notice of termination of the 1998 Lease upon CBS. However, CBS has not removed the Subject Sign. The Subject Sign remains on the Subject Property.

31.     Beginning in late 2007 and continuing to the date of the filing of this complaint, CBS has negotiated with the Zmijewskis to continue in possession of a portion of the Subject Property so that it could maintain and operate the Subject Sign.

32.     On information and belief, CBS alleges that the Trust, through the Zmijewskis, expressed a willingness to execute a new lease with CBS whereby CBS would continue to maintain the Subject Sign on the Subject Property if and when the Removal Provisions are deleted from the Village code.

33.     However, neither Zmijewskis nor the Trust will sign an agreement whereby CBS may maintain the Subject Sign on the Subject Property unless and until either the Village amends the Village code to delete the Removal Provisions or a court of competent jurisdiction finds that said Provisions are invalid.

34.     If the Subject Sign is not removed from the Subject Property, the Village Defendants, beginning on or about August 1, 2008 and acting pursuant to Ord. 1395-07, will demand that the Trust pay $2500.00 (the "Penalty Payment") to the Village for each month that the Subject Sign remains on the Subject Property.

35.     $2500.00 is the amount of the monthly rent that CBS paid as rent in the last months of the 1998 Lease.

36.     The Trust, in order to comply with Ord. 1395-07 and avoid the Penalty Payments, has asked CBS to remove the Subject Sign from the Subject Property.

\\Jill\documents\Open Files\CBS-Viacom-Infinity-OSI\Itasca\Work in Progress\Complaint-Final.doc

## COUNT I—VIOLATION OF ILLINOIS EMINENT DOMAIN ACT

For its cause of action against the Village Defendants in this count I, CBS states:

37.     CBS re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 36 above as paragraph 37 of this Count I.

38.     The Subject Sign was legally constructed and is currently maintained pursuant to permits issued by the Village and the State.

39.     The Village Defendants seek to remove the Subject Sign by enforcing the invalid Removal Provisions to the effect that the Trust is: (a) prohibited from signing a lease with CBS whereby CBS may continue to maintain the Subject Sign on the Subject Property; and (b) required to cause the removal and destruction of the Subject Sign, or make the Penalty Payments.

40.     Article I Section 15 of the Constitution of the State of Illinois states,

> "Private property shall not be taken or damaged for public use without just compensation as provided by law."

41.     The Fifth Amendment to the United States Constitution provides in relevant part:

> ...nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

42.     735 ILCS 5/7-101 (West 2007) (the Illinois Eminent Domain Act) provides in relevant part:

> The right to just compensation as provided in this Article applies to the owner or owners of any lawfully erected off-premises outdoor advertising sign that is compelled to be altered or removed under this Article or any other statute, or under any ordinance or regulation of any municipality or other unit of local government, and also applies to the owner or owners of the property on which that sign is erected.

43.     The Removal Provisions that the Village, acting through the Mayor and the Village Trustees, attached to the various ordinances affecting the use of the Subject Property

have no relation to public health, welfare and safety; are *ultra vires;* constitute improper conditional zoning; and, if enforced, fail to provide just compensation to CBS as required by the Constitution of the United States, the Illinois Constitution and the Illinois Eminent Domain Act.

44.    CBS possesses a clear and ascertainable rights in need of protection *pendente lite,* as the Village Defendants threaten CBS' rights to: (a) due process of law by failing to provide a hearing before the Village can take or damage CBS' business and property interests in the Subject Sign; and (b) its business and legal interests in the Subject Sign, and the reasonable expectation that it will remain in possession of a portion of the Subject Property.

45.    CBS will be irreparably harmed if the Village Defendants are permitted to enforce the Removal Provisions *pendente lite* to require that the Subject Sign be removed in that CBS will be unable to continue its business of selling advertising space, as aforesaid, with the result that CBS: (a) is deprived of a constitutional right to due process; (b) is losing its expectancy to renew or extend its right of possession; and (c) is irretrievably losing market position in the lucrative advertising area within the Village and the surrounding communities, and the attendant business recognition and goodwill to be provided by its presence at the Subject Property.

46.    CBS does not have an adequate remedy at law *pendente lite* in that: (a) a money judgment cannot compensate for a denial of due process; (b) the Subject Property and the Subject Sign, as assets of an operating business, are unique and have been maintained after considerable research and investigation; and (c) preliminary injunctive relief is the quickest, most efficient manner to protect CBS' rights unless and until the Court declares the Removal Provisions are invalid and, therefore unenforceable, or the Village initiates eminent domain proceedings to determine just compensation for the taking and damaging of CBS' property.

47.    CBS enjoys a reasonable likelihood of success on the merits in that existing case law supports CBS's claim that the actions of the Village Defendants in: (a) taking and damaging CBS' property without providing for payment of just compensation violates 735 ILCS 5/7-101 et seq.; and (b) repeatedly conditionally zoning the Subject Property are *ultra vires* and invalid.

48. The last, actual, peaceable, uncontested status that precedes the instant controversy is the current period in which CBS properly operates and maintains the Subject Sign. CBS merely seeks to maintain that *status quo* until a court can decide the issues.

49. By reason of the above and foregoing, CBS will sustain greater harm if the Village Defendants, their agents and employees enforce the Removal Provisions while this Court decides this case than the Village Defendants, their officers and employees, or the public will sustain if CBS is permitted to maintain and use the Subject Sign *pendente lite*.

**WHEREFORE**, CBS prays that the Court enter judgment in its favor and against the Village, the Mayor and the Village Trustees, as follows:

A. Make a binding declaration of law that the Removal Provisions are invalid and unenforceable, are *ultra vires,* constitute illegal conditional zoning and violate 735 ILCS 5/7-101 *et seq*. in that they: (1) prohibit the owners of the Subject Property from entering into a lease agreement with CBS; and (2) require that the Subject Sign be removed from the Subject Property without payment of just compensation;

B. Permanently enjoin the Village, the Mayor, the Village Trustees, their officers, agents and employees from taking any direct or indirect action to enforce the Removal Provisions, including collection of Penalty Payments; and

C. Grant CBS such other relief as is just and equitable.

### COUNT II—Federal Civil Rights

For its cause of action against the Village Defendants in this count II, CBS states:

50 CBS re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 49 above as paragraph 50 of this Count II.

51. The Village Defendants are "persons" as defined under 42 U.S.C. 1983.

52. The Village Defendants, acting under "color of law", through their actions, wrongfully promoted and enacted the Removal Provisions, and now seek to enforce said

Provisions against CBS and others by preventing CBS from leasing the Demised Property, and requiring it to remove and effectively destroy the Subject Sign without providing for payment of just compensation.

53.     Such actions, as set forth in detail above and incorporated into this count II by reference, are violations of CBS' constitutional rights to due process of law and just compensation for the taking and damaging of private property.

54.     The Mayor and the Village Trustees, in promoting and enacting the Removal Provisions acted with reckless indifference to the constitutionally protected rights of CBS, as aforesaid, and are continuing to so act in their efforts to enforce the aforementioned Removal Provisions.

55     As a proximate result of Village Defendants' violations of CBS' constitutional rights, as aforesaid, CBS is being damaged and suffering a deprivation of its constitutionally protected rights and the loss of income, and faces the imminent threat of losing its property.

**WHEREFORE,** CBS prays that this Court enter judgment in its favor and against the Village Defendants jointly and severally in an amount in excess of $50,000.00 as and for compensatory damages, the costs of this suit, its attorney fees pursuant to 42 U.S.C. 1988 and such other relief as this Court deems just and proper.

## COUNT III—DECLARATORY JUDGMENT

For a cause of action against the Village Defendants and the Trust in count III, CBS states:

56     CBS re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 49 above as paragraph 56 of this Count III.

57.     CBS has a reasonable expectation of signing an agreement with the Trust

whereby CBS will have the right to continued possession of the portion of the Subject Property to maintain and operate the Subject Sign.

58.     The Trust has refused and continues to refuse to sign an agreement with CBS for said continued possession because of the Removal Provisions and, on information and belief, CBS alleges that the Trust will not sign a new lease with CBS unless and until either the Village amends the Village Code to delete the Removal Provisions or a court declares that the Removal Provisions are invalid and unenforceable.

59.     The Removal Provisions are invalid, *ultra vires* and unenforceable.

60.     The Village Defendants do not agree that the Removal Provisions are invalid, *ultra vires* and unenforceable.

61.     The Trust has not challenged the Removal Provisions.  On information and belief, CBS alleges that the Trust will comply with the Removal Provisions as long as they remain a part of the Village code.

62.     By reason of the above and foregoing, a justiciable issue exists as to the validity and enforceability of the Removal Provisions.

**WHEREFORE,** CBS prays that this Court make a binding declaration that the Removal Provisions are invalid, *ultra vires* and unenforceable in that they: (1) prohibit the Trust from entering into an agreement with CBS granting it a right to possession of a portion of the Subject Property to maintain the Subject Sign; and (2) require that the Subject Sign be removed without payment of just compensation.

Robert J. Weber
30 N. LaSalle Street
Suite 2900
Chicago, IL  60602
312-920-0120

Robert J. Weber

\\Jill\documents\Open Files\CBS-Viacom-Infinity-OSI\Itasca\Work in Progress\Complaint-Final.doc

## VERIFICATION

Under penalties as provided by law pursuant to sec. 1-109 of the Code of Civil Procedure, Mitch Matson, the undersigned, certifies that the statements set forth in the foregoing Complaint for Declaratory Judgment and Injunction are true and correct, except for those matters which are alleged on information and belief and, as to those matters, Affiant has reasonable information to believe that the same are true.

Mitch Matson

Attorney No. 25892

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CBS OUTDOOR, INC., as successor to Olympic Outdoor Advertising, Inc., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. |
| VILLAGE OF ITASCA, ILLINOIS; CLAUDIA GRUBER; JEFF AIANI; MICHAEL LATORIA; ELLEN LEAHY; JEFF PRUYN; RON PUTZELL; TOM REYNOLDS; and WAYNE HUMMER TRUST COMPANY, N.A., as Trustee under Trust Agreement dated 4-16-07 and known as Trust BEV 2384, | ) ) ) ) ) ) ) ) ) | 08CH24689 |
| Defendants. | ) ) | |

## APPENDIX IN SUPPORT OF VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

### Index

| Description | Tab |
|---|---|
| 1982 Lease | 1 |
| State of Illinois sign permit no. 1-1623 | 2 |
| Village of Itasca electrical and building permits | 3 |
| 1998 Lease | 4 |
| Village of Itasca ordinance no. 542-83 | 5 |
| Village of Itasca ordinance no. 1395-07 | 6 |

Robert J. Weber
30 N. LaSalle Street
Suite 2900
Chicago, IL 60602
312-920-0120

NATIONAL ADVERTISING COMPANY LEASE

BE⁃⁃⁃⁃⁃ PARK, PARK, IL 60501

083884/083894

This Lease made this __14th__ day of __May_____, 1982,
between Vern McCarthy, Jr.                hereinafter called the "Lessor"
and OLYMPIC OUTDOOR ADVERTISING, INC., of Crestwood, Illinois,
hereinafter called "Lessee".

R 85 - 9 3 1 9 3     DU PAGE COUNTY RECORDER

'85 OCT 28 PM 12:00

WITNESSETH:

1.  __Agreement to Lease.__  That in consideration of the covenants
and agreements of Lessee hereinafter set forth, Lessor does hereby
lease to said Lessee and Lessee does hereby lease from Lessor, the
realestate legally described on Exhibit "A" attached hereto and
incorporated herein; for purposes of an advertising sign as located
upon a copy of a Plat of Survey attached hereto as Exhibit "B",
which sign will be installed upon the premises by a Backhoe footing,
a copy of which cross section drawing is attached hereto as Exhibit "C".

2.  __Term.__  Lessee shall have and hold the demised premises for
a lease period commencing on the 1st day of the month following
Lessee's procurement of State of Illinois and Village of Itasca
sign permits, and ending on the anniversary of the fifteenth year
from the commencement date, subject to the further terms and covenants
contained herein.

In consideration of this Lease, the Lessor covenants and agrees
to give the Lessee an initial period of 120 days following execution
of this Lease, within which to secure the aforesaid permits.  If after
such period, Lessee has not procured the permits, Lessee shall have
an additional 12 months within which to obtain issuance of the
respective permits provided, however, that Lessee shall pay to Lessor
the sum of $250.00 per month until said permits are secured.  If the
permits have not been issued by the end of said 12 month period, then,
not withstanding any other provision contained herein, this Lease
shall automatically be deemed cancelled and void for all purposes
whatsoever.  If Lessee has obtained the necessary permits within the
aforementioned period of time, then the Lease term shall be deemed
to commence on the first day of the month following the date of
issuance of the last required permit.

0 3 - 07 - 201 - 0 0 1

BEDFORD PARK, ARGO, IL 60501

3.  **Rent.**  Lessee agrees to pay to Lessor as rent for said premises the sum of $6,000.00 per year from the first through the fifth years inclusive; $8,400.00 per year from the sixth through the tenth years, inclusive; and $9,600.00 per year from the eleventh through the fifteenth years inclusive, said respective rental to be payable monthly in advance to Vern McCarthy, Jr.  8 Brighton Lane Oak Brook, Illinois  60521 ., or at such other address as may be advised in writing from time to. time thereafter.* See Paragraph 7 of attached Addendum.

4.  **Security Deposit.**  Prior to the commencement of the term hereof, Lessee will deposit an irrevocable Letter of Credit in the sum of $2,000.00 due one year from the date of commencement of the Lease term, as security deposit for Lessee's faithful performance and observance of the terms, covenants and conditions of this Lease; it is agreed that in the event Lessee defaults in respect to any of the Lease terms, including, but not limited to the payment of monthly installments of rent, Lessor may, but shall not be compelled to use, apply, or retain the whole or any part of the security deposit so deposited to the extent required for payment of the rent or performance. of any of the covenants contained in this Lease.  Upon termination of the Lease or any extended period hereunder, and provided Lessee has fully performed all of its covenants contained herein, Lessor shall pay and return the security deposit to Lessee less any charges against said deposit which may then be applicable.

Lessor shall have the right to assign this security deposit to any purchaser of the property; in such event, Lessor shall be exonerated from further obligation hereunder and Lessee shall look to the purchaser for return of its funds.

5.  **Real Estate Taxes.**  Lessee acknowledges that the advertising sign which it proposes to construct upon the Leasehold may have a taxable consequence upon the Leasehold estate.  Accordingly, Lessee does hereby covenant and agree that it will pay and reimburse to Lessor any real estate tax levy imposed upon the property of which the demised premises is a part, which levy is directly attributable to the advertising sign.  Lessee agrees that it will pay Lessor promptly upon being billed for said tax payment.

- 2 -

6. <u>Insurance</u>. At all time from the inception of the commencement of the term of this Lease until its termination, Lessee will at its sole cost and expense, maintain the following insurance policies of coverage upon the sign and the demised premises:

(a) Comprehensive general public liability insurance against claims for personal injury, death or property damage occurring in connection with the use and occupancy of the advertising sign upon the leased premises, naming Lessee and Lessor, as the named insureds, such insurance to afford protection to the limit of not less than $1,000,000.00 in respect to injury or death of a single person and, with respect to property damage, to the limit of $50,000.00 during construction of the advertising sign, and thereafter, upon completion of its erection, the sum of $500,000.00 during the balance of the term of this lease.

7. <u>Use of Premises</u>. The leased premises shall be used by Lessee as a site for erection and maintenance of a sign board.

8. <u>Hold Harmless and Indemnity</u>. Lessee agrees that Lessor, its beneficiaries, trustee, and agents, shall not be liable for any loss, damage injuries, or any other casualty of whatsoever kind or nature which may be caused to the person or property of any other person, including Lessor, whether on or off of the demised premises, which may arise out of or result from Lessee's use, possession, operation, maintenance or lack thereof, of the sign board installed upon the demised premises, and inorder to induce Lessor to execute this Lease, Lessee does for itself, its successors and assigns, hereby agree to hold harmless and indemnify Lessor, all beneficiaries, agents, and their trustee, from and against all claims, demands, liabilities, suits and actions, including all reasonable expenses and attorney's fees incurred by or imposed upon Lessor, its agents, other beneficiaries and its trustee, in connection therewith, for such loss, damage, injury or other casualty.

9. <u>Assignment, Subletting, Encumbrances</u>. Lessee agrees that it will not mortgage or encumber this Lease, nor sublet the demised premises, nor shall Lessee suffer any mechanic's lien, or lien or encumbrance of any nature, to be placed upon the leasehold hereby created, or any part thereof, by operation of law or otherwise, without the specific written consent of Lessor first had and obtained. Lessee shall submit plans and specifications for all sign board construction along with verification of financial arrangements

- 3 -

BEDFORD PARK, ARGO, IL 60501

necessary to construct and build the sign board, prior to commencement of construction.

Lessee shall have the right to assign this Lease without consent of Lessor, to any individual, partnership, joint venture, or corporation which is the successor of Lessee's business.

10. <u>Condition and Repair of Improvements</u>. Lessee agrees that the premises and improvements thereon have been examined and that Lessee knows the condition thereof and acknowledges the receipt of same in good order and repair (except if otherwise specified), and Lessee further agrees to keep said demised premises in a clean and healthful condition and to make all necessary repairs, and to comply with all applicable laws, ordinance, and regulations relating to Lessee's use of the demised premises, all at Lessee's sole expense, and upon expiration of this Lease or its prior termination as herein provided, to deliver to Lessor immediate possession of said demised premises and the improvements thereon in the same condition as when received, reasonable wear and tear excepted.

11. <u>Renewal</u>. Provided Lessee is not in default, it shall have the right to renew this Lease for an additional term of five years commencing on the first day of the month following the termination of this Lease, upon three month's prior written notice of exercising of this option being given to Lessor. If Lessee shall elect to renew and extend this Lease, the rent for such additional five year term shall be a sum equal to the last annual rental paid to Lessor increased by 15% per annum.

12. <u>Termination</u>. The Lessee shall have the right to terminate this Lease, and any renewal thereof, at any time, upon three month's written notice to Lessor, that any ordinance, statute, law, regulation, administrative decision, or Court order has rendered Lessee's use of the demised premises illegal. In all events, upon early termination or Lease expiration, Lessee shall remove all of Lessee's signs, fixtures and other property from the leased premises within 30 days prior to the expiration of said notice, and provided Lessee shall have complied with the provisions hereof, it shall have no further obligation to Lessor and shall not be liable for further rent after date of such removal by Lessee.

- 4 -

BEDFORD PARK, ARGO, IL 60501

13. **Default.** If default be made in the payment of the above rent, or any part thereof, or in any of the covenants herein contained to be kept by Lessee, Lessor may at his election declare the term of this Lease ended and pursue his remedies at law against Lessee.

14. **Plurals, Successors, Recording.** The words "Lessor" and "Lessee" wherever herein occurring and used shall be construed to mean "Lessors" and "Lessee" in case more than one person constitutes either party to this Lease; and all the covenants and agreements contained shall be binding upon, and inure to, their respective successors, heirs, executors, administrators and assigns and may be exercised by his or their attorney or agent. Further, an executed copy of this Lease shall be recorded by Lessee with the Recorder of Deeds of Cook County.

15. **Severability.** Whenever possible each provision of this Lease shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Lease shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Lease.

16. **Notices.** It is further agreed that all notices required under this Lease shall be deemed to be properly served if delivered in writing personally, or sent by certified mail addressed to Lessee, 13456 Loomis Ct., Crestwood, Illinois  60445 or to the Lessor at its office at 8 Brighton Lane, OakBrook    , Illinois, 60521

17. **Release of Leased Lands.** Lessee covenants and agrees that upon completion of the erection of the sign board, it will return to control of the Lessor, all of the demised premises described in this Lease except that portion of the land used for the structural footing and space plate surrounding the pipe supporting the sign board which is erected by Lessee. Lessee reserves unto itself the right of ingress and egress to said parcel for repair and maintenance of the sign board.

LESSOR:

BY: _____

LESSEE:
Olympic Outdoor Advertising, Inc.

BY: _____ (PRESIDENT)

NATIONAL ADVERTISING COMPANY
6950 S. HARLEM AVE.
BEDFORD PARK, ARGO, IL 60501

<u>ADDENDUM TO LEASE</u>

This addendum is attached to and made a part of that certain lease dated <u>May 14, 1982</u> by and between Olympic Outdoor Advertising, Inc. and Vern McCarthy, Jr.  The parties thereto agree as follows:

1.  A personal guarantee by Michael R. Hoggatt of Crestwood, Illinois, to guarantee this lease for a period not to exceed 24 months.

2.  Upon termination of this lease, Lessee would be responsible for the removal of any utility poles and concrete pads that resulted from the construction and operation of the billboard.

3.  Lessor will have the right to post any mutually approved messages, during any down time on proposed billboard.  The length of time to be determined by Lessee pending start date for a new advertiser. All costs of materials and labor to be at Lessor's expense.  Lessee reserves the right to inform the general public of availability of sign on one-half the paintable surface of sign.

4.  Lessor will have the right of approval on the location of the sign described in attached legal description.  Lessor shall also have the right to approve the most direct route of utility poles to proposed sign.

5.  Lessor will have the right to grant any easements to utility companies to service the property.

6.  Lessee will be granted an initial term of 120 days free of charge in which to secure necessary permits, commencing upon May 17, 1982, and ending 120 days later.  After such date, Lessee will be granted an additional 12 month term in which to secure permits, at a rate of $250.00 per month until such a time permits are granted.

*7.  Lessor, at his option, may cancel the 11th through 15th year term of this lease upon 90 days written notification of a bona fide offer to purchase the premises in question, without the sign. Lessee has the option to re-negotiate before actual closing with the proposed new owners of property, a new real estate land lease for the sign.

R85-1-93193

NATIONAL ADVERTISING COMPANY
6850 S. HARLEM AVE.
BEDFORD PARK, ARGO, IL 60501

STATE OF ILLINOIS)
                  ) ss
COUNTY OF DuPage )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Vern L. McCarthy Jr. personally known to me to be the same person whose name subscribed to the foregoing lease, appeared before me this day in person, and acknowledged that __he__ signed, sealed, and delivered the said lease as __his__ free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this __14th__ day of __May__, 1982.

Commission expires __2-17-86__.

                                    _____
                                    NOTARY PUBLIC

STATE OF ILLINOIS)
                  ) ss
COUNTY OF DuPage )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Michael R. Hoggatt personally known to me to be the same person whose name is subscribed to the foregoing lease, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said lease as his free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this __14th__ day of __May__, 1982.

Commission expires __2-17-86__.

                                    _____
                                    NOTARY PUBLIC

MAIL TO: _____
         _____
         _____

This instrument prepared by:

Craig J. Cobine
Nadelhoffer, Hennessy, Dommermuth,
and Brestal
124 S. Washington Street
Naperville, Illinois   60566
(312)   355-8200



BACKHOED FOOTING

65 feet To Top    14 x 19



R85 - 93193

#1-1623

5/1

083884/89L

STATE OF ILLINOIS
DEPARTMENT OF TRANSPORTATION

APPLICATION FOR
OUTDOOR ADVERTISING PERMIT
INTERSTATE

Application is hereby made for a permit to erect an outdoor advertising sign to be located and described hereinafter, and in accordance with the provisions of the Highway Advertising Control Act of 1971 and the regulations promulgated thereunder:

**OWNERSHIP**

Owner of Proposed Sign _National Advertising_ OLYMPIC OUTDOOR ADVERTISING, INC

Address _13456 LOOMIS CT_ _CRESTWOOD_ _ILL_ _60445_ _371-6602_
        (Street)            (City)           (State)  (Zip)    (Phone)

Owner of Land _VERN McCARTHY JR._

Address _8 BRIGHTON LANE_ _OAKBROOK_ _ILL_ _60521_ _____
        (Street)           (City)        (State) (Zip)      (Phone)

**PROPOSED SIGN LOCATION**

1.  County _DuPage_    2. Marked Route No. _I-290_

3.  Sign location will be _400_ feet/miles _N_ of _IRVING PARK RD AT I-290_
                                          (NSEW)      (Route, other landmarks, etc.)

    on the _W_ side of the highway.
           (NSEW)

4.  Category:  A) Sale or Lease _____   B) On Premise _____   C) Business Area _X_  D)   Traveling Public Information _____.

5.  Sign structure will be _1000_ ft. from the nearest existing or other proposed sign.

6.  Will sign be within incorporated limits, as those limits existed on September 21, 1959,    Yes _X_    No _____ .

    Give name of town _ITASCA_.

7.  If outside of incorporated limits, will the sign be in an area that was zoned commercial or industrial as of September 21, 1959,    Yes_____  No_____.  Area was zoned by_____.
                                                                                        (controlling body)

8.  Will sign be in an area that has been zoned commercial or industrial subsequent to September 21, 1959.    Yes_____

    No _X_.

9.  If sign is to be on premise, will it be more than 50' from activity.  Yes **N.A.**  No_____.

10. If a permit is being requested for a traveling public information sign:

    A)  Is the sign location within 12 air miles of the advertised activity.  Yes_____  No_____.

(over)    9 Months    Received on may 14, 1982 Diana

p.T.



# *Village of Itasca*

### 312-773-2720 or 2721
## BUILDING PERMIT

Date __7/20/82__     (Good for 1 Year Only)

Location __North Side of Rt. 19 Abutting I-290 on the West Side__
Addison Twp.

Lot _____ Block _____ Subdivision _____

Owner __Vern McCarthy Jr.__

Contractor __Olympic Outdoor Sign/GRC Structures__

Billboard

Type of Bldg. ☐ Brick    ☐ Frame    ☐ Residence    ☐ Garage    ☒ Other _____

| | | |
|---|---|---|
| Inspections indicated on permit card issued with this permit should be issued before proceeding with next stage of construction. | Building Permit Fee | $ _____ |
| | Engr. & Plan Exam. | _____ |
| | Occupancy Certificate | _____ |
| | Performance Certificate | _____ |
| Notify building department 24 hours in advance of inspections required. | Plumbing Inspection | _____ |
| | Electrical | 49.50 |
| Changes in construction from that indicated on prints submitted must be approved by building department. | Heating | _____ |
| | Ventilation | _____ |
| | Air Conditioning | _____ |
| Permit card must be posted on premises. | Air Polution | _____ |
| | Sprinkler & Fire Prevention Fee | _____ |
| Sewer and water stub must be inspected before connection with sewer and water is made. | Water for Construction | _____ |
| | Water Meter Rental | _____ |
| Down spouts shall not be connected to sewer system. | Sewer Connection Fee | _____ |
| | Water Connection Priviledge | _____ |
| Permit must be secured to break curb for driveway entrance. | Occupation of Street | _____ |
| | Driveway or Sidewalk Fee | _____ |

VALUES $ __50,000.00__

SQ. FT. __1,344 V Shaped__

Sign Fee    80.00

_____

TOTAL    $ 129.50

_Walter J Butler_     _Gerald W Vergel_

Trustee                     Building Commissioner

This permit is issued with the express stipulation that where there is no sidewalk at the location shown above, one shall be laid by the owner or his agent and if the existing sidewalk is in bad repair it shall be relaid at the owner's expense.

3

# APPLICATION FOR CERTIFICATE
## OF OCCUPANCY OF PREMISES

**Date** _____

Building Commissioner
Village of Itasca, Illinois.

Application is hereby made for a certificate of occupancy for the premises described on the reverse hereof.

The undersigned applicant certifies that the building will be used only for the purpose for which this permit was issued and that the premises as described meet the requirements of the Building Code relative to occupancy.

Signature _____

BUILDING PERMIT NO. _____ FEE _49,50_ PERMIT NO. _____

**THE PERMIT ISSUED ON THIS APPLICATION WILL AUTHORIZE ONLY WORK SPECIFIED, CONTRACTOR MUST GIVE COMPLETE INFORMATION AS INDICATED BELOW:**

ELECTRICAL INSPECTION DEPT.

ITASCA, ILLINOIS

## APPLICATION FOR PERMIT
## TO DO ELECTRICAL WORK

DATE _7-19-82_

PRINT _I-290 at Irving Park Rd_
_North_
NUMBER AND STREET OF INSTALLATION
STREET CORNER LOCATIONS NOT ACCEPTABLE
SPECIFY: NORTH SOUTH EAST OR WEST LOCATION

PRINT _Olympic Outdoor Adv, Inc_
OWNER OR USER

_G.R.C Structures Ltd_
PERSON, FIRM, OR CORPORATION DOING WORK

_9146 Spaulding Ave_
ADDRESS

_Jerry Carstens_
SUPERVISING ELECTRICIAN

REGISTERED AT _Chgo_ REG. NO. _Co6291_

YOUR JOB NO. _____

VALUE OF INSTALLATION $ _5,000._

WORK TO BE COMMENCED _Upon Permit_

WORK TO BE COMPLETED _Sept 1, 1982_

REMARKS _60 Amp Service_

TRUSTEE _Walter J Butler_

---

WIRING _12 ga Cu. THWN Solid Wire_ FIXTURES _8_

### LIGHTING CIRCUITS AND OUTLETS

| | | 2 WIRE | 3 WIRE | 4 WIRE |
|---|---|---|---|---|
| 15 AMP. CIRCUIT | | | | |
| 20 AMP. " | | 2 | | |
| 40 AMP. " | | | 4 | |
| OUTLETS ON EXISTING CIRCUITS | | | | |

### LAMPS, FIXTURES, SOCKETS, RECEPTACLES

| 50 WATT OR LESS | 60 WATT | 75 WATT | 100 WATT | 150 WATT |
|---|---|---|---|---|
| | | 400 | | |
| 200 WATT | 300 WATT | 500 WATT | SWITCHES | 100 WATT RECEPT |
| | | 8 | | |

### FLUORESCENT LAMPS

| 20 WATT | 40 WATT | 100 WATT | | |
|---|---|---|---|---|
| | | | | |

### SIGNS

| NO. OF SIGNS | TRANSF. | V.A. RATING |
|---|---|---|
| 1 Double face | | |

### POWER

| | NUMBER | TOTAL H.P. |
|---|---|---|
| AIR CONDITIONERS | | |
| APPLIANCES | | |
| MOTORS | | |

### SINGLE FAMILY DWELLING

| NO. OF SQ. FT. | NO. OF OPENINGS |
|---|---|
| | |

SERVICE REVISIONS, OTHER APPARATUS, REPAIRS, ETC.

_Carl W Bretsch_
SIGNATURE OF ELECTRICAL INSPECTOR

4

## IMPORTANT NOTICE

A $10,000.00 license bond required.

A permit must be obtained for all installations or alterations of electric equipment.

A permit must be obtained *before the work is started*.

Permits will be issued to electrical contractors only when they are registered in conformity with the ordinances of the Village of Itasca, Illinois.

Application for the permit must give the location by street and number. Locations on corners will not be accepted. The street number *must be correct*. A person doing work at any other location than that specified in the permit is in violation of the ordinance and the records of the department are thereby confused and the furnishing of current delayed.

Application must be signed by the Registered Contractor and by the Qualified Electrician.

The inspection fee must be paid before a permit is issued. As this fee is based on the apparatus installed *a correct statement* of such apparatus must appear on the application.

The permit issued on this application will authorize only work here applied for. If other work is done it must be covered by additional permits.

Contractor shall not make connection to existing wiring where same is defective. In all cases contractor installing apparatus in addition to existing load shall be held responsible for any overload of service, branch mains or circuits.

No current shall be used on apparatus installed under authority of a permit without approval of electrical department.

When this installation is ready for current a request for current must be made.

A violation of the ordinances of the Village of Itasca, Ill., governing the installation and alteration of electrical equipment is punishable by a fine from $5.00 to $500.00.

R GL LF

Lease # _____909369_____

## SIGN LOCATION LEASE

1. The undersigned, as Lessor, hereby leases and grants to Outdoor Systems, Inc. (Lessee), the exclusive use of the below described premises for the purpose of erecting, placing and maintaining illuminated or non-illuminated outdoor advertising sign structure(s) (the structure(s)), including any and all necessary appurtenances thereto, commencing on June 1, 1998.

   Legal Description: see attached plat of survey

   Location Description: West of I-290 @ Irving Park Road

   In the city/town of Itasca, County of DuPage in the State of Illinois.

2. The initial term of this Lease shall be ten years commencing on the date set forth in paragraph #1 above.

3. Lessee shall pay to Lessor rental of: Thirty thousand dollars ($30,000.00) per year, payable monthly in advance beginning on June 1, 1998.  Rental payments shall be limited to (1) check per payment payable to no more than (2) payees.

4. Lessor warrants that he is the owner or authorized agent of the owner of the subject premises and that he has full authority to enter into this Lease; and grants Lessee the right to make any necessary applications with, and obtain permits and/or licenses from governmental bodies for the purpose of erecting, illuminating and maintaining of Lessee's structure(s), at Lessee's sole discretion and expense.  All such permits shall always remain the property of Lessee.

5. Lessee shall save Lessor harmless from all damages to persons or property by reason of negligent acts of it's employees, agents, or others employed by Lessee.

6. This agreement is a Lease, not a license, and all structure(s) and appurtenances thereto placed on the premises by Lessee, its agent or predecessor shall remain the property of Lessee, and that, notwithstanding the fact that same shall constitute a trade fixture, Lessee shall have the right to remove same at any time during the term or after the expiration of the Lease.  If Lessee removes it's structure(s), only the above-grade portions of said structure(s) shall be removed.  The future existence of below-grade improvements shall not constitute continued occupancy of the premises by Lessee.  Below grade is defined as anything below 2 feet of existing grade level.  Upon termination of the lease and Lessee's removal of its sign structure(s), Lessor agrees to hold Lessee harmless from any and all claims which may arise as a result of Lessee's past occupancy of the premises.

7. The Lease shall continue in full force and effect for its initial term and thereafter for subsequent terms of one year, unless terminated at the end of such term or successive terms upon written notice by the Lessor or Lessee served not less then (90) days before the end of such term or subsequent term.  Subsequent like term rentals shall be equal to the initial term rental rate plus 2%.

8. In the event that (in Lessee's sole opinion): (a) Lessee is unable to secure or maintain any required permit or license from any appropriate governmental authority, (b) federal, state or local statute, ordinance regulation or other governmental action which would preclude or materially limit use of the premises for outdoor advertising purposes, (c) the visibility of the structure(s) to the traveling public is obstructed or obscured, (d) the advertising value of the structure(s) is impaired or diminished, (e) there occurs a diversion of traffic from or a change in the direction of traffic past the structure(s), (f) Lessee is prevented from maintaining electrical power to the premises, (g) Lessee finds that maintenance of the structure(s) is impractical or uneconomical due to engineering, architectural, construction or maintenance circumstances which will require structural improvements to Lessor' property, (h) maintenance will be hampered, or made unsafe due to conditions caused by nearby properties, land uses, or utilities, then, Lessee shall at its option have the right to terminate this Lease upon thirty (30) days notice in writing to Lessor, and Lessor shall refund to Lessee any rental payment paid in advance for the remainder of the unexpired term, or Lessee may reduce the rental in proportion to the decreased value of the premises for outdoor advertising purposes.

9. In the event that the subject premises, or any part thereof, is condemned or taken by power of eminent domain or if the property is conveyed to any part as a result of the power of eminent domain, Grantee shall be entitled to an apportionment on the basis of the value of its leasehold interest of any awards or compensations received in connection with any legal action, proceeding or compromise settlement made pursuant to any governmental agency's action.

10. It is the understanding of the parties that visibility of the structure(s) to the traveling public is the essence of the Lease.  Lessor shall not cause nor permit any sign structure(s) other than those in existence at the time of the execution of this Lease, to be placed on the aforementioned premises or any premises owned or controlled by the Lessor, his beneficiaries, if any, within a radius of one thousand feet (1000') from Lessor's structure(s) location(s) without prior written consent from the Lessee.  Said consent shall not be unreasonably withheld.  Lessor shall not cause nor permit Lessee's structure(s) to be obscured from visibility to the traveling public.  Lessor grants Lessee the right to trim, cut, or remove brush, trees, shrubs, or any vegetation or remove any obstructions of any kind which limit the visibility of the structure(s).

11. Lessor warrants that if Lessee shall pay the rent provided for herein, Lessee shall and may peaceably and quietly have, hold and enjoy use of the premises for the term of this Lease.  To this end if at any time during the term of this Lease, Lessor fails to pay any lien or encumbrance affecting the premises including any past due real estate taxes, interest, and/or penalties thereto, and after receipt of Lessee's written request to Lessor to pay said sums, Lessee shall have the right, but not the obligation, to pay such amounts or any portion thereof.  Lessee may deduct any such payments, and any additional related expenses, including reasonable attorney's fees, with interest thereon at the interest rate applicable to judgments under state law per annum from the date of payment, from the next succeeding installment of rent until Lessee has been fully reimbursed for such payments, interests and fees.

12. This Lease shall not obligate the Lessee in any way until it is executed and executed by the General Manager or Real Estate Manger of the regional office of Lessee which will be responsible for executing Lessee's duties under this Lease.  It is understood that this written lease between the parties constitutes the entire Lease and understanding between the parties and supersedes all prior representations, understandings, and agreements relating to the property site(s).  This Lease may not be modified except in writing, signed by an Officer of Lessor and the General Manager or Real Estate Manager of the regional office of Lessee.

13. This Lease shall be binding upon heirs, executors, personal representatives, successors and assigns for the parties hereto and Lessor agrees to notify Lessee of any change of ownership of the premises related thereto or of Lessor's mailing address within seven (7) days of such change.  Lessee shall notify Lessor of any assignment of this lease.

14. Lessee, upon receipt of written approval, which shall not be unreasonably withheld, shall have the right to add any ancillary use to its structure(s), including but not limited to routing necessary underground lines and telecommunications devices.

15. Lessee shall have the right of first refusal, for the period of one (1) year following termination of this Lease, including any subsequent like terms as provided herein, to enter into another lease with the Lessor on the same terms and conditions as offered to Lessor by any other entity for the purpose of erecting, placing, and maintaining of an outdoor advertising sign structure(s) upon the premises of which this Lease is the subject.

16. All work related to the outdoor advertising structure shall be performed in a workman-like manner and damages to the property, i.e., under grade drain tiles, landscaping, etc. will be repaired in a prompt and workman-like manner, which costs shall be born by Lessee.

17. It is acknowledged by the parties that the rental payments herein are predicated on monthly installments. Should the provisions of paragraph eight (8) become operative, or the term of this Lease commences on some day other than the first of the month, all rental payments required hereunder shall be prorated based upon a thirty (30) day month. Payments shall be deemed received by Lessor upon deposit by Lessee with the United States Postal Service.

18. Lessor consents and grants to Lessee and/or its agents the right to ingress and egress to and from its structure(s) over any premises owned or controlled by lessor for all purposes reasonably necessary for the proper erection, placing, maintaining, servicing and removal of the structure(s), the right to provide or establish electrical power to the structure(s) (at Lessees' sole expense) and place incidental and ancillary equipment thereon, on Lessor's premises if the maintenance of the structure(s) on the premises are proscribed by federal, state, or local statute, ordinance or regulation. Lessee shall notify Lessor of any (and may) sublet its structure(s) or assign its rights, title and interests in this lease at any time.

19. In the event that either party is in default under the terms of this Lease, the non-defaulting party shall deliver written notice via the United States Postal Services by certified or registered return receipt mail to the defaulting party, and said party may cure such failure within seven (7) days of receipt of such notice.

20. The parties agree the first attempt to resolve any dispute under this agreement shall be made through mediation. In the event the mediation efforts fail, the parties agree that the matter may be brought to a court of competent jurisdiction, subject to any statutory limitations, wherein the prevailing party is to be awarded reasonably attorney's fees and reasonable costs of suit.

BY: _____
    Office Electronics, Inc. - Lessor

_____
    Title

DATE: _4/2/98_____

EXECUTED by the Lessor in the presence of
X _____
    and
_____
who is/are hereby requested to sign as witness(es)

BY: _____
    [NAME] - Lessor

_____
    Title

DATE: _____

EXECUTED by the Lessor in the presence of

_____
    and
_____
who is/are hereby requested to sign as witness(es)

LESSOR'S SOCIAL SECURITY/TAX I.D. NO. _____

BY: _____
    OUTDOOR SYSTEMS, INC. - Lessee

_____
    Title

DATE: _4-30-98_____

EXECUTED by the Lessor in the presence of

_____
    and
_____
who is/are hereby requested to sign as witness(es)



COMMUNITY DEVELOPMENT

JUL.22.2003 09:30 6307730852

065 IRVING PARK
ROAD

ORDINANCE NO. 543-83

## ORDINANCE AMENDING THE ZONING ORDINANCE

COPY

WHEREAS, on petition of Office Electronics, Inc., having a residence in Itasca and being the contract purchaser of premises hereinafter described, for a change of zoning classification from R-3 to R-3 Special Use As A Planned Development for said premises, and publication having been made, and a public hearing having been held by the Plan Commission of the Village of Itasca, and the Plan Commission having considered the matter and recommending to the Board of Trustees that the premises described herein be rezoned to R-3 Special Use As A Planned Development, but subject to the pro- visions hereinafter recited in Section 2, and the Board of Trustees having considered the matter and the entire proceedings being con- ducted according to law;

NOW, THEREFORE, BE IT ORDAINED by the President and Board of Trustees of the Village of Itasca, DuPage County, Illinois, as follows:

Section 1: The zoning classification under provisions of the Itasca Zoning Ordinance, being Ordinance No.134-59 as amended, be and the same is hereby further amended and changed from R-3 to R-3 Special Use As A Planned Development, but subject to the further provisions of this ordinance recited in Section 2, for that premises legally described as:

That part of the North East 1/4 of Section 7, Township 40 North, Range 11, East of the Third Principal Meridian, described by commencing at the point of intersection of the West line of said North East 1/4 with the center line of Irving Park Boule- vard and running thence North 00 Degrees 47 Minutes West along said West line, 51.09 feet to the North line of relocated Irving Park Boulevard for a point of beginning; thence contin- uing North 00 Degrees 47 Minutes West along said West line, 418.63 Feet to the Southerly line of the Right of Way of the Chicago, Milwaukee, St.Paul and Pacific Railroad; then South 78 Degrees 17 Minutes East along said Southerly line, 720.0 feet to the Westerly line of the Right of Way of F. A. I. Route 90; then Southerly along said Westerly line, 351.07 feet to the Northerly line of relocated Irving Park Boulevard; thence Westerly along said Northerly line, 661.94 feet to the point of beginning, in DuPage County, Illinois.

Section 2: That the following provisions, requirements and conditions are imposed on said premises and must be followed and complied with in the use and activities of and on the premises by Office Electronics, Inc., or any other successor in title:

(a) Compliance with all ordinances and requirements of the Village of Itasca respecting storm water, drainage and detention;

(b) Submission of landscape plan for approval prior to any building permit;

(c) Use is restricted to office, warehouse, storage, printing and light manufacturing;

(d) A railroad siding or spur track is permitted at the rear of the premises, provided that it conforms with the delineation shown on Exhibit B attached to the application for Planned Development and Special Use;

(e) The number of square feet of landscaped, grassed, or unpaved areas should not be reduced in size from that shown in the attachment to the application for Planned Development and Special Use, without further approval of the Board of Trustees;

(f) The highway sign lease with Olympic Outdoor Advertising for the sign located at the northeast corner of the premises shall be cancelled, effective not later than May 13, 1992, with said sign to be removed from the premises within 30 days after the lease cancellation; a reasonable access shall be provided to the sign maintenance crews;

(g) There shall be compliance with all other Village ordinances and codes.

Section 3: This ordinance shall be published in booklet form, and the Village Clerk is directed to insert copies of same in the Zoning Ordinance book, previously published by authority of the corporate authorities of the Village, within 10 days from its passage and approval, and this ordinance shall take effect 10 days following such publication.

PASSED and APPROVED this _15T_ day of _FEBRUARY_ 1983 by Roll Call Vote.

AYES: _5_    NAYS: _O_    ABSENT: _/_

APPROVED:

President, Board of Trustees

ATTEST:

_Elizabeth M. Upstrom_
Village Clerk

PASSED: _FEBRUARY 1, 1983_
APPROVED: _FEBRUARY 1, 1983_

COMMUNITY DEVELOPMENT

## CERTIFICATE

The undersigned, Elizabeth M. Upstrom, certifies that she
is the duly elected and acting Village Clerk of the Village of
Itasca, DuPage County, Illinois, and as such is the keeper of
all books, records and Ordinances of said Village; that the
attached is a true, correct and exact copy of

ORDINANCE NO. 542-83

AMENDING THE ZONING ORDINANCE

which was duly passed and approved by the President and Board
of Trustees of the Village of Itasca at its regular meeting on
February 1, 1983, that said ordinance remains in full force and
effect and has not been modified or repealed.

Dated at Itasca, Illinois, February 16, 1983.

Elizabeth M Upstrom
Village Clerk, Village of Itasca,
DuPage County, Illinois

## ORDINANCE NO. 1395-07

## AN ORDINANCE FOR A SPECIAL USE PERMIT FOR
### 865 WEST IRVING PARK ROAD (MR. DAVID'S CARPET SERVICE LTD.)

WHEREAS, Leonard and David Zmijewski - Mr. David's Carpet Service, Ltd. (hereinafter "Petitioner") filed a petition for a special use permit for the property commonly known as 865 West Irving Park Road, Itasca, Illinois, which is legally described on Exhibit A, attached hereto and incorporated herein referenced (hereinafter referred to "Subject Property"), and which is zoned B-3 Service Business District with a Special Use Permit; and,

WHEREAS, pursuant to Ordinance No. 532-83 the subject property was re-zoned to B-3 special use as a planned development. The special use allowed Office Electronics, Inc. to operate as an office, warehouse, storage, printing and light manufacturing facility. Further, Ordinance No. 542-83 imposed a condition that the highway sign (billboard) located at the northeast corner of the premises was to be removed from the premises within 30 (thirty) days after the lease cancellation, which was effective no later than May 13, 1992; and,

WHEREAS, pursuant to Ordinance No. 1180-03, TST Impreso, Inc. filed a petition for an amendment to the planned development seeking to construct a building addition to the subject property. The amendment was approved. However, the approval was pursuant to an agreement between the Village of Itasca and the owner of the Subject Property in which the removal of the billboard would occur within 30 (thirty) days of June 30, 2008; and,

WHEREAS, Petitioner proposes a special use permit for office, warehouse, storage, sales and installation of floor coverings and fixtures/furniture related to Mr. David's business; and,

WHEREAS, a public hearing was held by the Itasca Plan Commission on June 20, 2007, pursuant to public notice as required by law, with respect to Petitioner's application; and,

WHEREAS, the Plan Commission approved Petitioner's request for a special use permit. However, the Plan Commission recommendation was contingent upon removal of the billboard on the premises pursuant to the requirements of Ordinance No. 1180-03 and the related agreement between TST Impreso and the Village of Itasca; and,

WHEREAS, the corporate authorities have determined that it is in the public interest to grant the special use requested by the Petitioner.

NOW, THEREFORE, BE IT ORDAINED by the President and Board of Trustees of the Village of Itasca, DuPage County, Illinois, as follows:

SECTION ONE: The special use permit requested by the Petitioners is hereby approved.

SECTION TWO: Approval of the special use permit is contingent upon the following terms:

1. The use of the facility shall be consistent with the following plans submitted by Petitioner:

A. Site Plan, prepared by Cornerstone Architects Ltd. for TST Impreso, dated June 30, 2003;

B. Foundation Plan, prepared by George Grivas Associates, Ltd. for TST Impreso, Sheet S2.1, dated August 29, 2003, last revised September 1, 2003;

C. Demolition and Floor Plans, prepared by Emil Mastandrea Architect, Inc., Sheet D1.00, dated June 5, 2007; and,

D. Existing First Floor Egress Plan, prepared by Cornerstone Architects, Ltd. for TST Impreso, Sheet No. EGR-B, dated September 1, 2003.

2. Removal of the billboard consistent with the agreement between TST Impreso and the Village of Itasca as outlined in Ordinance No. 1180-03.

3. Compliance with Section 14.12(6)(b)(2) of the Itasca Zoning Ordinance which outlines the appropriate procedure for any changes to the approved final plan.

2

SECTION THREE: Petitioner shall be allowed to honor any lease-back provision to TST Impreso for a period of one year from the passage of this ordinance. Such lease-back provision would allow TST Impreso to continue with their existing operation (which was permitted under Ordinance 1180-03) during the period of winding down the TST Impreso business operations at the Subject Property. Further, in the event the sale of the property between Petitioner and TST Impreso is not consummated, the special use of TST Impreso shall continue.

SECTION FOUR: The use of the Subject Property shall be in compliance with all Village ordinances, including but not limited to the Itasca Zoning Ordinance and the building code, unless otherwise modified by this ordinance.

SECTION FIVE: SEVERABILITY. The various provisions of this Ordinance are to be considered as severable, and if any part or portion of this Ordinance shall be held invalid by any Court of competent jurisdiction, such decision shall not affect the validity of the remaining provisions of this Ordinance.

SECTION SIX: REPEAL OF PRIOR ORDINANCES. All prior Ordinances and Resolutions in conflict or inconsistent herewith are hereby expressly repealed only to the extent of such conflict or inconsistency.

SECTION SEVEN: EFFECTIVE DATE. This Ordinance shall be in full force and effect from and after its passage, approval and publication in pamphlet form as provided by law.

| AYES: | Aiani, Leahy, Latoria, Putzell, Pruyn |
| NAYES: | Reynolds |
| ABSENT: | -0- |

3

ABSTAIN:      -0-

APPROVED and ADOPTED by the Village President and Board of Trustees of

the Village of Itasca this  24  day of  July      , 2007.

APPROVED:

President Claudia "Gigi" Gruber

ATTEST:

Village Clerk Carole Schreiber

4

## CERTIFICATION

I, the undersigned, do hereby certify that I am the Village Clerk of the Village of Itasca, DuPage County, Illinois, and that the foregoing is a true, complete and exact copy of Ordinance No. XX-XX, enacted on ___7/24___, 2007, and approved on , 2007, as the same appears from the official records of the Village of Itasca.

Village Clerk Carole Schreiber

5

## LEGAL DESCRIPTION

THAT PART OF THE NORTH EAST ¼ OF SECTION 7,
TOWNSHIP 40 NORTH, RANGE 11, EAST OF THE THIRD
PRINCIPAL MERIDIAN, DESCRIBED BY COMMENCING AT
THE POINT OF INTERSECTION OF THE WEST LINE OF
SAID NORTH EAST ¼ WITH THE CENTER LINE OF IRVING
PARK BOULEVARD AND RUNNING THENCE NORTH 00
DEGREES 47 MINUTES WEST ALONG SAID WEST LINE,
51.09 FEET TO THE NORTH LINE OR RELOCATED IRVING
PARK BOULEVARD FOR A POINT OF BEGINNING;
THENCE CONTINUING NORTH 00 DEGREES 47 MINUTES
WEST ALONG SAID WEST LINE, 418.63 FEET TO THE
SOUTHERLY LINE OF THE RIGHT OF WAY OF THE
CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC
RAILROAD; THEN SOUTH 78 DEGREES 17 MINUTES EAST
ALONG SAID SOUTHERLY LINE, 720.0 FEET TO THE
WESTERLY LINE OF THE RIGHT OF WAY OF F.A.I. ROUTE
90; THEN SOUTHERLY ALONG SAID WESTERLY LINE,
351.07 FEET TO THE NORTHERLY LINE OF RELOCATED
IRVING PARK BOULEVARD; THENCE WESTERLY ALONG
SAID NORTHERLY LINE, 661.94 FEET TO THE POINT OF
BEGINNING, IN DUPAGE COUNTY, ILLINOIS.